## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **FRACTUS, S.A.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:09-CV-203** |
| | § | |
| **SAMSUNG ELECTRONICS CO., LTD.;** | § | **JURY TRIAL DEMANDED** |
| **SAMSUNG TELECOMMUNICATIONS** | § | |
| **AMERICA, LLP; SAMSUNG** | § | |
| **ELECTRONICS RESEARCH INSTITUTE;** | § | |
| **SAMSUNG SEMICONDUCTOR EUROPE** | § | |
| **GMBH; LG ELECTRONICS INC;** | § | |
| **LG ELECTRONICS U.S.A., INC.;** | § | |
| **LG ELECTRONICS MOBILECOMM** | § | |
| **U.S.A., INC.; RESEARCH IN MOTION,** | § | |
| **LTD.; RESEARCH IN MOTION CORP.;** | § | |
| **PANTECH WIRELESS, INC.; KYOCERA** | § | |
| **WIRELESS CORP.; KYOCERA** | § | |
| **COMMUNICATIONS, INC.; HTC** | § | |
| **CORPORATION; and HTC AMERICA,** | § | |
| **INC.** | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANTS' PROPOSED
## FINAL JURY INSTRUCTIONS FOR INFRINGEMENT TRIAL[1]

---

[1] Defendants are filing these proposed instructions and interrogatories as part of the matters required to be filed with the pretrial order.  Defendants reserve the right to request such additional or supplemental instructions and interrogatories as may be necessary.  By submitting these requested instructions and interrogatories, Defendants are not conceding that there are any fact issues for the jury to resolve or that there is legally sufficient evidence to support the submission of any claims by the plaintiff, Fractus, S.A.  Defendants expressly reserve their rights to file motions seeking judgment as a matter of law on all or some of Fractus' claims and on Defendants' defenses and counterclaims under Rule 50 of the Federal Rules of Civil Procedure.

EXHIBIT E

## TABLE OF CONTENTS

**1**    FINAL INSTRUCTIONS AFTER THE CLOSE OF EVIDENCE.....................................1

    **1.1**    INTRODUCTORY INSTRUCTIONS ........................................................1

        *1.1.1*   CONSIDERING WITNESS TESTIMONY ................................1

        *1.1.2*   HOW TO EXAMINE THE EVIDENCE ..................................2

        *1.1.3*   EXPERT WITNESS ........................................................3

    **1.2**    CONTENTIONS OF THE PARTIES ........................................................5

    **1.3**    DIRECT INFRINGEMENT—GENERALLY ........................................6

    **1.4**    DIRECT INFRINGEMENT—LITERAL INFRINGEMENT .................7

    **1.5**    THE MEANING OF CLAIM TERMS.....................................................8

    **1.6**    OPEN-ENDED OR "COMPRISING" CLAIMS ..................................11

    **1.7**    INFRINGEMENT OF DEPENDENT CLAIMS..................................12

    **1.8**    DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS .....14

    **1.9**    WILLFULNESS .....................................................................................16

    **1.10**    DAMAGES—GENERALLY ...............................................................18

    **1.11**    DAMAGES—BURDEN OF PROOF ...................................................19

    **1.12**    DAMAGES—WHEN DAMAGES BEGIN...........................................20

    **1.13**    REASONABLE ROYALTY—DEFINITION ......................................22

    **1.14**    REASONABLE ROYALTY—FACTORS TO CONSIDER...............24

    **1.15**    FACTORS THAT DO NOT AFFECT THE AMOUNT OF DAMAGES...........26

    **1.16**    INSTRUCTIONS FOR DELIBERATIONS .......................................27

# 1   FINAL INSTRUCTIONS AFTER THE CLOSE OF EVIDENCE

## 1.1   INTRODUCTORY INSTRUCTIONS[2]

MEMBERS OF THE JURY: You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### 1.1.1   CONSIDERING WITNESS TESTIMONY

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

---

[2] Source:  The Court's Sample Products Liability Jury Charge provided by the Court on its website, adapted to a patent case.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### *1.1.2*  HOW TO EXAMINE THE EVIDENCE

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition. Some time before

2

this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

Unless you are instructed otherwise, the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts based on all the evidence, both direct and circumstantial.

### *1.1.3*  EXPERT WITNESS

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is called an expert witness and is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

3

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly as an expert witness and that income from such testimony represents a significant portion of the expert's income.

DB1/66970730.6

## 1.2    CONTENTIONS OF THE PARTIES[3]

Fractus contends that DEF1 and DEF2 make, use, offer to sell, sell or import products – specifically, antennas used in cellular phones – that infringe the following claims of the seven patents that are at issue in this case.

| Family | U.S. Patent No. | Claims Allegedly Infringed |
|--------|-----------------|----------------------------|
| MLV | 7,015,868 (868 Patent) | 26, 35 |
| MLV | 7,123,208 (208 Patent) | 7, 12 |
| MLV | 7,397,431 (431 Patent) | 14, 30 |
| MLV | 7,394,432 (432 Patent) | 6 |
| MLV | 7,528,782 (782 Patent) | 6, 7, 8 |
| MBM | 7,411,556 (556 Patent) | 40 |
| LA | 7,312,762 (762 Patent) | 21 |

DEF1 and DEF2 deny that they are infringing the foregoing asserted claims of the seven patents that are in issue. Your job is to decide whether the asserted claims of the above seven patents have been infringed.  If you decide that any claim of the patent has been infringed, you will then need to decide any money damages to be awarded to Fractus as compensation for the infringement.  You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.[4]

---

[3] Source:  Model Patent Jury Instructions 2.1 (modified to take out references to invalidity).
[4] HTC Corporation and HTC America, Inc. are not accused of willful infringement and accordingly do not request any instructions regarding willfulness.

5

## 1.3    DIRECT INFRINGEMENT—GENERALLY[5]

A patent claim may be directly infringed in two ways.   A claim may be "literally" infringed or it may be infringed under the "doctrine of equivalents."[6]   I will now instruct you on the specific rules you must follow to determine whether Fractus has proven that DEF1 and DEF2 have infringed one or more of the patent claims involved in this case.

---

[5] Source:  Model Patent Jury Instructions 3.1.

[6] Defendants contend that no instructions should be submitted under the doctrine of equivalents (DOE) and that, as a matter of law, Fractus cannot prove infringement under the DOE.   The instructions included in these draft instructions relating to infringement under the DOE are included only in the event this Court decides that there is a fact issue that can and should be submitted to the jury under the DOE.

6

## 1.4   DIRECT INFRINGEMENT—LITERAL INFRINGEMENT[7]

You must decide whether DEF1 and DEF2 have made, used, sold, or offered for sale within the United States, or imported into the United States, a product covered by the asserted claims of the seven patents at issue in this case.  You must compare each patent claim to each of the accused products of DEF1 and DEF2 to determine whether each and every requirement of the patent claim is included in the accused product.

To prove literal infringement, Fractus must prove that it is more probable than not that the accused products of DEF1 and DEF2 include each and every requirement in Fractus' patent claim.  An accused product does not infringe simply because it may be possible to alter it in a way that would satisfy all the limitations of a patent claim.[8]  If the accused products of DEF1 and DEF2 omit any requirement recited in the patent claim, then DEF1 and DEF2 do not infringe that claim.

For literal infringement, Fractus is not required to prove that DEF1 and DEF2 intended to infringe or knew of the patent.

---

[7] Source:  Model Patent Jury Instructions 3.2.
[8] *High Tech Med. Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995) ("[A] device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim.") (citation omitted).

DB1/66970730.6

## 1.5    THE MEANING OF CLAIM TERMS[910]

I have defined certain words and phrases in the patent claims asserted here.  During your deliberations you must apply these meanings:

**Multilevel structure** and **a structure** both mean "a structure for an antenna useable at multiple frequency bands with at least two levels of detail, wherein one level of detail makes up another level.  These levels of detail are composed of polygons (polyhedrons) of the same type with the same number of sides (faces) wherein most of the polygons (polyhedrons) are clearly visible and individually distinguishable and most of the polygons (polyhedrons) having an area of contact, intersection or interconnection with other elements (polygons or polyhedrons) that is less than 50% of the perimeter area."

**Polygon** and **polygonal element** mean the same thing: "a closed plane figure bounded by straight lines, further including circles and ellipses."

**Polyhedron** and **polyhedral element** both mean "a closed solid figure bounded by polygons."

**Geometric elements** means "polygons or polyhedrons."

**Impedance level** and **level of impedance** both mean "the combined amount of resistance and reactance measured at the input/output connector."

**Radioelectric behavior** and **radio characteristics and functionality** both mean "the level of impedance and radiation pattern."

**Communication service(s)** means "a service operating at a particular frequency band."

---

[9]   Source:   Model Patent Jury Instructions 3.3; *Markman* Order (Document 622) Adopting Report and Recommendation of Magistrate Judge (Document 526); Order Denying Plaintiff's Motion for Reconsideration of the Construction of "At Least A Portion" (Document 783).

[10]   Defendants are not conceding, by submitting instructions reflecting the claim constructions made by the Magistrate Judge and as affirmed and revised by Court, that the claim constructions are correct.  Defendants object to these instructions to the extent that are different from the claim constructions proposed by Defendants.

DB1/66970730.6

**Frequency band** means "a range of frequencies extending between two limiting frequencies."

**Multiband or multi-band** are not limiting (meaning, the terms can be ignored) when used in the preamble of a claim, but when used in the body of the claims, they mean "useable at more than one frequency band."

**Electromagnetically coupled** means the "direct or proximate linking of two or more elements in such a way that electromagnetic power is exchanged from one element to another."

**Said first and second portions defining empty spaces in an overall structure** means "said first and second portions defining areas without conductive material in an overall structure."

**Said first, second and third portions defining empty spaces in an overall structure** means "said first, second and third portions defining areas without conductive material in an overall structure."

**Space-filling curve** or **SFC,** as used in the 762 Patent, means "a curve composed by at least ten connected straight segments, wherein said segments are smaller than a tenth of the operating free-space wavelength and they are spatially arranged in such a way that none of said adjacent and connected segments form another longer straight segment."   As used in the 850 Patent and the 556 Patent, these terms mean "a curve for the shaping part of an antenna element composed by at least ten segments which are connected in such a way that each segment forms an angle with their neighbors, that is, no pair of adjacent segments define a larger straight segment, and wherein the curve can be optionally periodic along a fixed straight direction of space if and only if the period is defined by a non-periodic curve composed by at least ten connected segments and no pair of said and adjacent and connected segments define a longer

9

straight segment; the space filing curve can only intersect itself, if at all, at its initial and final point; and each segment must be shorter than a tenth of the free-space operating wavelength." For both definitions, a "segment" of a curve can only be counted once when determining whether the curve has the requisite 10 segments to make it a space-filling curve or SFC.

With respect to **at least a portion** [of the antenna is shaped as a space-filling curve], "as to arm antennas, the 'portion' must be the arm, and may not be the perimeter."

**Multi-segment curve**, **substantially non-periodic curve**, and **substantially non-periodic multi-segment curve**, as used in the 822 Patent claims, means the same as "space-filling curve" or SFC, as used in the 850 Patent.

**Box-counting dimension** means as follows:  "box counting refers to many methods of counting the smallest number of boxes of a defined size that are necessary to cover an object. The box-counting dimension is the logarithmic rate at which the number of boxes increase as the size of the boxes decrease."

**Mounted on** means "secured directly or indirectly to."

**Conducting surface** means "a polygon, a multilevel structure, or a solid surface with a space-filling perimeter."

**Loading structure** means "at least one conducting strip connected to at least one point on an edge of the at least one conducting surface, the maximal width of the at least one conducting strip being less than a quarter of the longest straight edge of the conducting surface."

10

**1.6     OPEN-ENDED OR "COMPRISING" CLAIMS[11]**

The beginning, or preamble, of a number of the patent claims uses the word "comprise" or "comprising."  "Comprising" means "including" or "containing but not limited to."  That is, if you decide that DEF1's or DEF2's accused product includes all the requirements in one or more of the asserted claims, the claim is infringed.  This is true even if the accused product includes components in addition to those requirements.

For example, a claim to a table *comprising* a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

---

[11] Source:  Model Patent Jury Instructions 3.4; *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007) (holding that "comprised of" has the same open-ended meaning as "comprising."); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997)

11

## 1.7   INFRINGEMENT OF DEPENDENT CLAIMS[12]

So far, my instructions on infringement have applied to what are known as independent claims.  The patents at issue here also contain a number of dependent claims.

An independent claim is a claim that does not refer to any other claim of the patent.  An independent claim must be read separately from other claims to determine the scope of the claim.

A dependent claim is a claim that depends upon at least one other claim in the patent.  A dependent claim is ultimately dependent, directly or indirectly, on an independent claim.  A dependent claim may also be dependent on one or more intervening claims.  A dependent claim incorporates (1) all of the elements of the independent claim upon which it depends, (2) all of the elements of any intervening claims upon which it depends, and (3) the elements recited in the dependent claim itself.

In order to find infringement of a dependent claim, you must first determine whether the claim or claims upon which the dependent claim depends have been infringed.  If you decide that any claim upon which the dependent claim depends has not been infringed, then the dependent claim cannot have been infringed.  If you decide that every claim upon which the dependent claim depends has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in the accused products.  If each additional requirement has been included, then the dependent claim has been infringed.

For example, suppose Claim 1 was directed to "A table, comprising a flat surface supported by 5 legs."  Claim 2 was "The table of claim 1, wherein the table legs are made of metal."  Claim 3 was "The table of Claim 2, wherein the legs have wheels on them."  A party

---

[12] Source:  Model Patent Jury Instructions, 3.7 (modified to reflect multiple levels of dependency); AIPLA's Model Patent Jury Instructions, 3.6 (modified to reflect multiple levels of dependency); *Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1196-99 (Fed. Cir. 1994) (*citing Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-89 (Fed. Cir. 1989)); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 nn.9&10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985).

does not infringe Claim 3 simply by making a table with wheels on the legs.  Because Claim 3 depends upon Claim 2 which depends upon claim 1, to infringe Claim 3, the accused table must have wheels on the legs, have legs made of metal, and have 5 legs supporting a flat surface.  In other words, it must have all the limitations of the dependent claim and all other claims to which it refers.

Fractus must prove that it is more probable than not that a patent claim has been infringed.

DB1/66970730.6

## 1.8    DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS[13][14]

Fractus alleges that DEF1 and DEF2 infringed certain claims of the seven patents under the "doctrine of equivalents."

To prevail on its allegation of infringement, Fractus must prove that it is more probable than not that the accused product contains requirements identical or equivalent to each claimed requirement of the patented invention.  You must proceed on a requirement-by-requirement basis.  Fractus must establish that each requirement in the claim is present in the accused product, either literally or under the doctrine of equivalents.

A claim requirement is present in an accused product under the doctrine of equivalents if the difference between the claim requirement and a corresponding aspect of the accused product is insubstantial.

In making this determination, you may consider whether the corresponding aspect in the accused product performs substantially the same function in substantially the same way to achieve substantially the same result as the requirement in the claim.  You may also consider whether people of ordinary skill in the art believed that the corresponding aspect of the accused product and the requirement recited in the patent claim were interchangeable at the time of the alleged infringement.  The proper time for evaluating equivalency—and thus knowledge of interchangeability between requirements—is the time of infringement, not the time the patent was issued.  Under the doctrine of equivalents, those of ordinary skill in the art do not have to know of the equivalent when the patent application was filed or when the patent issued.  Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to

---

[13] Source:  Model Patent Jury Instructions 2.8; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1053 (1997).

[14] As already explained, Defendants assert that no instructions should be submitted under the doctrine of equivalents (DOE) and that, as a matter of law, Fractus cannot prove infringement under the DOE.  These instructions on the DOE are included only in the event this Court decides that there is a fact issue that can and should be submitted to the jury under the DOE

the invention covered by the claims.  Also, changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents.

DB1/66970730.6

## 1.9    WILLFULNESS[1516]

In this case, Fractus alleges that the Defendants willfully infringed the Asserted claims of the patents-in-suit.  The issue of willful infringement relates to the amount of damages Fractus is entitled to recover in this lawsuit.  If you decide that the Defendants willfully infringed the claims of Fractus's patent, then it is my job to decide whether or not to award increased damages to Fractus.  You should not take this factor into account in assessing the damages, if any, to be awarded to Fractus.

To prove willful infringement, Fractus must persuade you that it is highly probable that, before May 9, 2009, each Defendant acted with reckless disregard of the claims of Fractus' patents. To show "reckless disregard," Fractus must satisfy a two-part test:  the first concerns the Defendants' conduct, the second concerns the Defendants' state of mind.

When considering the Defendants' conduct, you must decide whether Fractus has proven it is highly probable that each Defendant's conduct was reckless; that is, that each Defendant proceeded with the allegedly infringing conduct with knowledge of the patent, and in the face of an unjustifiably high risk that it was infringing the claims of a valid and enforceable patent. The state of mind of Defendants is not relevant to this part of the inquiry. Reasonable or credible defenses presented at trial, even if ultimately not successful, demonstrate a lack of recklessness.

If you conclude that Fractus has proven that Defendants' conduct was reckless, then you need to consider the Defendants' state of mind. You must determine whether Fractus proved it is highly probable that the unjustifiably high risk of infringement was known or so obvious that it

---

[15] HTC Corporation and HTC America, Inc. are not accused of willful infringement and accordingly do not request any instructions regarding willfulness.
[16] Source:  Model Patent Jury Instructions 3.1; 35 U.S.C. § 284:  *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).

should have been known to each Defendant. In deciding whether Defendants satisfied the state-of-mind part of the test, you should consider all facts surrounding the alleged infringement.

DB1/66970730.6

## 1.10    DAMAGES—GENERALLY[17]

I will now instruct you on damages.  If you find that DEF1 and/or DEF2 have infringed one or more valid claims of the seven patents in issue, you must determine the amount of money damages to which Fractus is entitled.  By instructing you on damages, I do not suggest that one or the other party should prevail.  These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate Fractus for the infringement, but it may not be less than a "reasonable royalty."  At the same time, your damages determination must not include additional sums to punish DEF1 and/or DEF2 or to set an example.  You may award compensatory damages only for the loss that Fractus proves was more likely than not caused by a particular defendant's infringement.

---

[17] Source:  Model Patent Jury Instructions 6.1.

## 1.11    DAMAGES—BURDEN OF PROOF[18]

Where the parties dispute a matter concerning damages, it is Fractus' burden to prove that it is more probable than not that Fractus' version is correct.  Fractus must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, Fractus is not entitled to damages that are remote or speculative.

---

[18] Source:  Model Patent Jury Instructions 6.2; *Wechsler v. Macke Intern. Trade, Inc.,* 486 F.3d 1286, 1293-94 (Fed. Cir. 2007)*; Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,* 425 F.3d 1366, 1372-73 (Fed. Cir. 2005)*; State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1072 (Fed. Cir. 2003)*; SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 926 F.2d 1161, 1164 (Fed. Cir. 1991)*; Lam, Inc. v. Johns-Mansville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

19

## 1.12   DAMAGES—WHEN DAMAGES BEGIN[19][20]

The amount of damages Fractus can recover is limited to those acts of infringement by DEF1 and DEF2 that occurred after Fractus gave DEF1 and DEF2 notice that they allegedly infringed the patents in issue.  Notice of infringement can be actual or constructive, and I will explain in a moment what that means.

Actual notice means that Fractus communicated to DEF1 and DEF2 a specific charge of infringement of the patents in issue by an accused product.  This notice is effective as of the date given.  You are instructed that the date DEF1 and DEF2 received actual notice of their alleged infringement was May 5, 2009, the date Fractus filed suit in this Court.

Constructive notice means that Fractus complied with the marking requirement of the patent law.  "Marking" means that substantially all of the products made, offered for sale, or sold under the patents in issue are marked to display the word 'patent' or the abbreviation 'pat.', together with the number of the patent.  Packaging may be marked instead of the product itself only if it is not feasible or practical to mark the product.[21]  Fractus has the burden of establishing substantial compliance with the marking requirement.  To do so, Fractus must show it is more probable than not that substantially all of the products it made, offered for sale, or sold under the patents in issue were marked, and that Fractus made reasonable efforts to ensure that its licensees

---

[19] Source:  Model Patent Jury Instructions 6.3; 35 U.S.C. § 287; *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316-17 (Fed. Cir. 2009); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1073 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1343 (Fed. Cir. 2001); *Gart v. Logitech*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Maxwell v. J. Baker*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1984).

[20] Defendants contend that they are entitled to judgment as a matter of law on the "marking" issue and that, as a matter of law, no damages can be awarded against Defendants until May 5, 2009, the date on which they received actual notice of Fractus' allegation of infringement.

[21] *Belden Tech. Inc. v. Superior Essex Comm'ns LP*, Civ. No. 08-63-SLR at 22 (D. Del. 2009) ("Marking the packaging may result in compliance when the patentee has shown that marking the patented product raises concerns of feasibility or practicality."); *Creative Pioneer Products Corp. v. K Mart Corp.*, 5 USPQ2d 1841, 1848 (S.D. Tex. 1987) ("the character of the product was such that a marking on the product would have been a relatively simple matter. Therefore, marking the packaging . . . is insufficient to commence the period for the recovery of damages.").

who made, offered for sale, or sold products under the patents in issue marked substantially all of their products.

Your job is to calculate damages from the date DEF1 and DEF2 received either actual or constructive notice, whichever was first.  You should not award damages for any infringement by DEF1 or DEF2 occurring before they first received notice of the patents in issue.

DB1/66970730.6

## 1.13   REASONABLE ROYALTY—DEFINITION[22]

Here, Fractus claims damages consisting of a reasonable royalty.  A royalty is an amount of money a licensee pays to a patent holder for each article a licensee makes, uses or sells under the patent.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  You must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A reasonable royalty consists of two components – a royalty base and a royalty rate.  The total amount of reasonable royalty damages is determined by multiplying the royalty base by the royalty rate.  The appropriate royalty base is the portion of the defendant's revenue derived from infringement.[23]   The royalty base must be specifically tied to the patented invention.   An appropriate royalty base in this case cannot be the entire value of the phones sold by the defendant.[24]   The royalty rate is a percentage of the royalty base adequate to compensate the

---

[22]   Source:  Model Patent Jury Instructions 6.6; *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009); *Laser Dynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-cv-348, 2010 WL 2331311, at *2-3 (E.D. Tex. June 9, 2010); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 288 (S.D.N.Y. 2009) (Rader, J.)

[23]   *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286 (N.D.N.Y. 2009) (Rader, J., sitting by designation) (granting defendant's motion for judgment as a matter of law that revenue derived from hypothetical sales of the infringing component – as opposed to sales of a larger component containing non-infringing features – constituted the appropriate royalty base).

[24]   *Uniloc USA, Inc. v. Microsoft Corp.*, Nos. 2010-1035, 2010-1055, 2011 WL 9738, at *24 (Fed. Cir. Jan. 4, 2011).

22

patent holder for the defendant's use of its invention.[25]   A patent holder cannot recover damages

multiple times on the same product.

---

[25] *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d at 286.

23

## 1.14   REASONABLE ROYALTY—FACTORS TO CONSIDER[26]

In determining the reasonable royalty that would have resulted from the hypothetical negotiation, you may not consider any evidence of damages that is not specifically tied to Fractus's invention.  You may consider real world facts -- including the following -- to the extent they are helpful to you and to the extent they are linked to the specific facts and technology at issue in this case:[27]

- Licenses or offers to license the patent at issue in this case

- Licenses involving comparable patents

- The licensing history of the parties

- Licensing practices in the relevant industry

- Whether the patent owner had an established policy of refusing to license the patent at issue.

- The relationship between the patent owner and alleged infringer, including whether or not they were competitors

- The significance of the patented technology in promoting sales of the alleged infringer's products and earning it profit

- Alternatives to the patented technology and advantages provided by the patented technology relative to the alternatives.

---

[26] *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *see also Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361-64 (Fed. Cir. 2006); *Trans-World Manufacturing Corp. v. All Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984).

[27] Uniloc USA, Inc. v. Microsoft Corp., Nos. 2010-1035, 2010-1055, 2011 WL 9738, at *20 (Fed. Cir. 2011) (citing ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010); see also Wordtech Systems, Inc v. Integrated Networks Solutions, Inc., 609 F.3d 1308, 1320-21 (Fed. Cir. 2010); Lucent Techs., Inc. v. Gateway, Inc., 580 F. 3d 1301, 1324 (Fed. Cir. 2009).

- The portion of the alleged infringer's profit that should be credited to the invention as distinguished from nonpatented features, improvements or contributions.

- Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

DB1/66970730.6

## 1.15    FACTORS THAT DO NOT AFFECT THE AMOUNT OF DAMAGES[28]

You must not award Fractus more damages than are adequate to compensate for the infringement nor should you include any additional amounts for the purpose of punishing the Defendants or setting an example.  You must not consider Fractus' allegation of willfulness in considering damages or take into account any evidence relating to those damages.  Consideration of willfulness is entirely separate from the question of damages.  You may not increase damages because you find willfulness or decrease damages because you did not find willfulness. Nor may you award damages that are speculative, only possible, or based on guesswork.

---

[28] HTC Corporation and HTC America, Inc. are not accused of willful infringement and accordingly do not request any instructions regarding willfulness.

DB1/66970730.6

## 1.16   INSTRUCTIONS FOR DELIBERATIONS[29]

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.

---

[29] Source:  The Court's Sample Products Liability Jury Charge provided by the Court on its website, adapted to a patent case.

Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

**You may now retire to the jury room to conduct your deliberations**.

DB1/66970730.6